UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JENNIFER P.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-1342-MJD-JPH |
| | ) |
| MARTIN O'MALLEY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Jennifer P. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. § 423(d). For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB and SSI in March 2011—over **thirteen years** ago—alleging an onset of disability as of June 21, 1994. [Dkt. 8-5 at 42.] The onset date was later amended to January 27, 2007. [Dkt. 8-11 at 14; Dkt. 8-8 at 91.] Claimant's applications were denied initially and again upon reconsideration, and hearings were held before Administrative Law Judge T.

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

Whitaker on January 24, 2013, and January 29, 2013.  [Dkt. 8-2 at 93, 44.]  On April 23, 2013, ALJ Whitaker issued a partially favorable decision, finding that Claimant became disabled on June 1, 2010.  *Id.* at 15.  That meant that she was entitled to SSI, but she was not entitled to DIB because her date last insured was March 31, 2009.  After the Appeals Council denied Claimant's request for review, Claimant appealed to this court.  That case was resolved when the court granted the parties' joint motion to remand and entered judgment in favor of Claimant on June 18, 2015.  [Dkt. 8-9 at 49.]   Pursuant to that judgment, the Appeals Council remanded Claimant's claim to the ALJ, noting deficiencies with the ALJ's step five determination and instructing the ALJ to "offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision on the issue of disability before June 1, 2010."  *Id.* at 59.

On remand, a hearing was held before ALJ Dennis Pickett on October 28, 2015.  [Dkt. 8-8 at 89.]  ALJ Pickett issued an unfavorable decision on January 27, 2016, determining that Claimant was not disabled prior to June 1, 2010.  [Dkt. 8-9 at 66.]  Claimant filed an appeal with the Appeals Council, and the Appeals Council again remanded the case to the ALJ on July 21, 2017, directing the ALJ to do following:

- Further consider the medical source opinions pursuant to the provisions of 20 CFR 404.1527, explain the weight given to such opinion evidence and provide rationale for discounting any opinion.  As appropriate, the Administrative Law Judge may request the treating and non-treating source to provide additional evidence and/or further clarification of the opinion (20 CFR 404.1512).

- Further consider the claimant's maximum residual functional capacity during the period at issue [January 27, 2007, through March 31, 2009][2] and provide appropriate rationale

---

[2] This was the relevant time period because only Claimant's claim for DIB remained at issue, and her date last insured for purposes of DIB eligibility was March 31, 2009. That means that Claimant is entitled to DIB only if she was disabled prior to March 31, 2009.  *See* 42 U.S.C. §

> with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Rulings 85-16 and 96-8p).
>
> - If warranted, obtain evidence from a medical expert to clarify the nature and severity of the claimant's psychological impairments (20 CFR 404.1527(e)).
>
> - If warranted, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.  The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566).  Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

[Dkt. 8-9 at 95] (footnote added).

Yet again, Claimant appeared for a hearing—her fourth—this time before ALJ Gladys Whitfield on April 24, 2018.  [Dkt. 8-8 at 41.] ALJ Whitfield issued an unfavorable decision on July 5, 2018, in which she found that Claimant had not been disabled "from June 21, 1994, through the date of this decision." *Id.* at 25.[3]  The Appeals Council granted Claimant's request for review and issued its decision on May 31, 2023—yes, almost **five years** following the ALJ's decision.  *Id.* at 5.   The Appeals Council found that ALJ Whitfield erred in addressing the period through the date of her decision, as her "decision should have only addressed the relevant period

---

423(c).  Claimant's claim for SSI was resolved when the Appeals Council upheld the first ALJ's determination that Claimant was disabled as of June 1, 2010.  *See* [Dkt. 8-9 at 58].  Claimant has been awarded SSI benefits beginning on her application date of March 11, 2011, and she is not entitled to receive SSI benefits for any time prior to that date, regardless of when she became disabled.  *See* 20 C.F.R. § 416.335 ("If you file an application [for SSI] after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month.").
[3] Earlier in her decision, ALJ Whitfield acknowledged the amended alleged onset date of January 27, 2007, [Dkt. 8-8 at 17], so it is unclear why ALJ Whitfield referred to the original onset date in her conclusion.

at issue for that claim, which is June 21,1994 through March 31, 2009, the date last insured." [Dkt. 8-8 at 6.][4]  Otherwise, as discussed in more detail below, the Appeals Council adopted most of the ALJ's findings and upheld her ultimate determination of no disability.

Claimant timely filed her Complaint on July 31, 2023, seeking judicial review of the Commissioner's decision. [Dkt. 1.]

## II.  Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis:  (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520.  Before continuing to step four, the ALJ must assess the

---

[4] The Appeals Council seems to have missed the amended alleged onset date entirely.

claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then she need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). While an ALJ need not address every piece of evidence, she "must provide a 'logical bridge' between the evidence and [her] conclusions." *Varga*, 794 F.3d at 813 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

### III.  ALJ Decision

ALJ Whitfield first determined that Claimant had engaged in substantial gainful activity since the original alleged onset date of June 21, 1994. [Dkt. 8-8 at 19.] At step two, the ALJ found that Claimant had the following severe impairments: "migraine headaches, depression/dysthymia/mood disorder, anxiety with agoraphobia and learning disability—

dyslexia/borderline intellectual functioning." *Id*. at 20.  At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period.  *Id*.  ALJ Whitfield then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following non-exertional limitations:  the claimant is not capable of climbing ladders, ropes and scaffolds.  The claimant's work cannot require driving to perform the functions of the job, exposure to hazardous moving machinery, unprotected heights, bright/pulsating lights, or interaction with the public.  The work should not require complex written or verbal communications.  The claimant is capable of occasional, superficial interaction with coworkers and supervisors.  The claimant is capable of simple, routine, repetitive tasks that are concrete and tangible, with few, if any, workplace changes, with no fast-paced production requirements and no tandem tasks or teamwork.

*Id.* at 21.

At step four, the ALJ found that Claimant was not able to perform her past relevant work during the relevant time period.  *Id*. at 24.  At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as folder (DOT 369.687-018), production inspector (DOT 739.687-102), and packer (DOT 559.687-074).  *Id*. at 25.  Accordingly, ALJ Whitfield concluded Claimant was not disabled.  *Id.*

As noted, almost five years later, the Appeals Council issued its order addressing Claimant's exceptions to ALJ Whitfield's determination.  [Dkt. 8-8 at 5.]  The Appeals Council acknowledged that ALJ Whitfield erred by failing to confine her findings to the relevant time period, which the Appeals Council incorrectly stated to be June 21, 1994, through March 31, 2009 (Claimant's date last insured), ignoring the amended onset date of January 27, 2007.  The Appeals Council further noted that while ALJ Whitfield found at step one that Claimant had

6

engaged in substantial gainful activity since her alleged onset date, that finding was based on work performed in 2018 and was therefore irrelevant to the question before ALJ Whitfield, which is whether Claimant was disabled prior to March 31, 2009.  *Id.* at 6.  The Appeals Council found that Claimant had not engaged in substantial gainful activity during the relevant time period.  *Id.*[5]  The Appeals Council agreed with the remainder of ALJ Whitfield's findings, but, as discussed in more detail below, attempted to shore up her opinion by providing further evaluation of several medical opinions of record and further explanation regarding the subjective symptoms evaluation.  *Id.* at 7-8.

## IV.  Discussion

The manner in which the Commissioner[6] has handled this case is nothing short of abysmal.  The almost five year delay between ALJ Whitfield's decision and the Appeals Council's review of that decision is inexcusable.  The fact that the Appeals Council then failed to adequately address the overarching error underlying ALJ Whitfield's decision and, quite frankly, left a muddled mess for this Court to attempt to review is reprehensible.

Claimant articulates six issues for review, but they all essentially come back to that same fundamental error.  ALJ Whitfield found that Claimant was not disabled **at any time** prior to July 5, 2018, the date of ALJ Whitfield's decision.  This, of course, is irreconcilable with the Commissioner's prior finding—which was made by the first ALJ to consider Claimant's case in 2013 and which has been adopted by the Commissioner ever since—that Claimant has, in fact,

---

[5] As noted, the Appeals Council incorrectly defined the relevant time period as "June 21, 1994, through March 31, 2009."  [Dkt. 8-8 at 6.]
[6] Astoundingly, there have actually been **six** different Commissioners and Acting Commissioners since Claimant filed her applications:  Michael Astrue, Carolyn Colvin, Nancy Berryhill, Andrew Saul, Kilolo Kijakazi, and the current Commissioner, Martin O'Malley.

7

been disabled since June 1, 2010.  In other words, the Commissioner has already conclusively determined that the evidence of record supports a finding that Claimant has been disabled since June 1, 2010, while ALJ Whitfield determined that that exact same evidence does not support that finding.  There is no way to affirm ALJ Whitfield's reasoning with regard to the period prior to June 1, 2010, while simultaneously rejecting her reasoning with regard to the period after June 1, 2010, because **it is exactly the same reasoning**.  And yet, while limiting its findings to the period prior to March 31, 2009, "[t]he Appeals Council adopt[ed] the Administrative Law Judge's findings or conclusion regarding whether the claimant is disabled" and "[t]he Appeals Council agree[d] with the Administrative Law Judge's findings under steps 2, 3, 4 and 5 of the sequential evaluation." [Dkt. 8-8 at 6.]  This is utterly nonsensical.

      The Appeals Council's attempts to shore up ALJ Whitfield's opinion fall woefully short of salvaging it.  When the Appeals Council remanded the case in 2017, it specifically directed the ALJ on remand to "[f]urther consider the medical source opinions pursuant to the provisions of 20 CFR 404.1527, explain the weight given to such opinion evidence and provide rationale for discounting any opinion."  [Dkt. 8-9 at 95.]  ALJ Whitfield failed to comply with this instruction.  Instead, she lumped each category of medical opinion provider together and gave a rather generic assessment of the weight given to the opinions in each category.  The Appeals Council went through each relevant medical opinion and gave specific reasons for the weight given each one.  Neither ALJ Whitfield nor the Appeals Council did anything to explain what change occurred in Claimant's condition on June 1, 2010, such that she was disabled on that date but was

8

not disabled prior to that date.  Without that explanation, it is simply impossible to affirm the Commissioner's decision in this case.[7]  Remand is required on that basis alone.

In addition, the Court notes that many of the reasons given by the Appeals Council for the weight assigned to various medical opinions are unsupported by the record.  The Appeals Council gave Dr. Grant's opinion "partial weight," but the only explanation given is that the opinion "is supported by the evidence of record, including Dr. Grant's exam findings."  [Dkt. 8-8 at 7.]  It is unclear then why only "partial weight" was accorded to this opinion.  Similarly, the Appeals Council gave "some weight" to the opinion of state agency psychologists Johnson and Horton, but found that the opinions "are supported by the evidence of record."  *Id.*  Again, why only "some weight"?  The record is devoid of that explanation.

In addition, the Appeals Council gave the opinion of consultative psychologist Michael O'Brien, Psy.D., "limited weight," explaining as follows:

> Dr. O'Brien stated that the claimant can understand, remember, and carry out simple directions, her concentration is sufficient for simple tasks, her anxiety would interfere with her ability to relate to others, even on a superficial basis, and her anxiety would also interfere with her ability to adapt to routine changes.  We find that the evidence of record, including Dr. O'Brien's exam findings, is more consistent with the opinions of Drs. Johnson and Horton, and that the claimant is capable of simple, routine, repetitive tasks with no interaction with the public, occasional and superficial interaction with coworkers and supervisors, and no tandem tasks, as well as few if any workplace changes.  Dr. O'Brien noted that the

---

[7] The Commissioner discusses at length in his brief the reasons given in the original ALJ's decision for choosing June 1, 2010, as the date Claimant became disabled.  *See* [Dkt. 14 at 10].  However, the Appeals Council **vacated** that decision with regard to the period prior to June 1, 2010, [Dkt. 8-9 at 58], and the second ALJ made it clear that he was making a *de novo* determination with regard to that time period, *see* [Dkt. 8-8 at 98] ("[T]his is a de novo hearing. . . . I understand it is completely from scratch.").  The Appeals Council then found the second ALJ's decision that Claimant was not disabled prior to June 1, 2010, to be lacking in several respects and remanded for further proceedings.  [Dkt. 8-9 at 95.]  The third ALJ then noted that she was "not bound by the decision made previously" and that it was her "job to independently make a new decision."  [Dkt. 8-8 at 43.]

> claimant was cooperative during the interview and sat calmy in her seat, and exhibited common social graces (Exhibit 11F, page 4), indicating that she is able to relate to others to the extent described in the residual functional capacity. Similarly, Dr. Grant noted that the claimant was alert during the interview and exhibited appropriate attention and concentration (Exhibit 12F, page 2-3). The claimant reported in her function report that she is able to babysit sometimes, enjoys taking care of kids, and is able to go to Walmart and restaurants occasionally (Exhibit 3E, pages 4, 5,7, 8). These activities indicate greater ability than noted by Dr. O'Brien, who indicated that anxiety would interfere with the claimant's ability to relate to others even on a superficial basis and adapt to routine changes. Therefore, Dr. O'Brien's opinion is entitled to limited weight.

*Id.* at 7-8. But Dr. O'Brien knew about Claimant's behavior during the interview and nonetheless, based on his expertise, reached the conclusion he reached, a conclusion that was largely consistent with the conclusion reached by Dr. Grant. The only explanation the Appeals Council gave for why it disagreed with these medical opinions is that Claimant "is able to babysit sometimes, enjoys taking care of kids, and is able to go to Walmart and restaurants occasionally." *Id.* But Claimant's testimony about these activities and other evidence of record makes is clear that Claimant's anxiety does, in fact, interfere with her ability to successfully complete these activities. With regard to Claimant's restaurant visits, her long-time friend Vickie Thrasher stated that she and Claimant's husband had encouraged Claimant to go to Applebee's[8] about once a week "in order to overcome anxiety but if clmt does go she will be anxious, makes it quick, will not eat dinner—maybe orders an appetizer and drink so they can leave fast" and that Claimant "cancels about 50% of the time." [Dkt. 8-6 at 39] (2011 agency report of interview with Vickie Thrasher); *see also* [Dkt. 8-2 at 128] (Claimant's testimony at the 2013 hearing that

---

[8] There is no evidence of record that Claimant went to "restaurants," as the Appeals Council states. The only evidence is that she occasionally went to one particular restaurant, an Applebee's. In addition, the evidence regarding Claimant's ability to go to Walmart is that she could only go to one particular Walmart location because she is familiar with it, although learning to do so was "tuff." [Dkt. 8-6 at 22, 23.]

10

she no longer goes out to eat because she "had some episodes" and her husband doesn't ask her to go out anymore and she doesn't want to go because it was "way too embarrassing."). With regard to babysitting, Claimant babysat her friend Vickie Thrasher's children on occasion, and Claimant explained that she cancelled if she did not feel up to babysitting on a particular day and that the kids, whom she'd known all of their lives, "know on my bad days to find quite [sic] things to do" or "I call someone to help me and I go to my room." [Dkt. 8-6 at 20, Dkt. 8-8 at 97.] The cited evidence does not contradict Dr. O'Brien's opinions.

Similarly problematic is the Appeals Council's subjective symptom evaluation, which reads as follows:

> The Appeals Council adopts the Administrative Law Judge's finding that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. The Appeals Council finds that the third-party statements at Exhibits 4E and 5E are not entitled to great weight. The claimant and third-party allegations regarding anxiety and headaches are inconsistent with the claimant's ability to babysit, including overnight, willingness to forgo medications when she was babysitting, work at Great Clips cutting hair, and go to Walmart and restaurants during the period at issue (Exhibit 3E, pages 4, 5, 7, 8; Exhibit 1F, page 8-9, 12; Exhibit 20D, page 3).

[Dkt. 8-8 at 8.] This, again, ignores the descriptions of Claimant's babysitting and trips to Applebee's. It also ignores the fact that Claimant was not able to successfully work at Great Clips without significant accommodations from her boss. *See* [Dkt. 8-8 at 61-63] (describing accommodations and the fact that she missed work frequently because of anxiety); [Dkt. 8-8 at 102-04] (describing being fired from numerous other Great Clips locations for poor performance). Indeed, Claimant had approximately 56 jobs between 1995 and 2011 from which she was fired because of her inability to perform her work in an acceptable manner or which she

11

quit because she could not do the job. [Dkt. 8-8 at 105; Dkt. 8-6 at 91.] The Appeals Council fails to explain how the evidence it cites, when properly viewed in context, is inconsistent with Claimant's subjective symptoms allegations. *See Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (evidence of how claimant carries out activities must be considered).

The record in this case has been considered by three ALJs and the Appeals Council. The wide range of findings that have been made based on essentially the same record are enough to induce whiplash. For example, Claimant's severe impairments have been listed as follows:

- migraine headaches and headaches; organic mental disorders, including attention deficit disorder (ADD), attention deficit hyperactivity disorder (ADHD), and a learning disorder with a history of reading problems and dyslexia; affective disorders, including bipolar I disorder, premenstrual dysphoric disorder, a mood disorder, a major depressive disorder, depression, and dysthymia and characterized by a history of sleep disturbance; anxiety disorders, including social phobia traits, panic disorder with agoraphobia, a generalized anxiety disorder, and post-traumatic stress disorder (PTSD) [Dkt. 8-2 at 18] (ALJ Whitaker, 2013).

- headaches; borderline intellectual functioning; a generalized anxiety disorder; a panic disorder with agoraphobia; and a mood disorder not otherwise specified [Dkt. 8-9 at 69] (ALJ Pickett, 2016).

- migraine headaches, depression/dysthymia/mood disorder, anxiety with agoraphobia and learning disability/dyslexia/borderline intellectual functioning [Dkt. 8-8 at 20] (ALJ Whitfield, 2018).

Her RFC for the period after June 1, 2010, has been determined by the three ALJs to be as follows:

- Beginning on June 1, 2010, the claimant has the residual functional capacity to perform work at all exertional levels as defined in 20 CFR 404.1567(c) and 416.967(c) but with the following nonexertional limitations: She is limited to a work environment with no exposure to a noise level rating of 4, which is loud noise and to a noise level rating of 5, which is very loud noise, as those noise level ratings are defined in the Dictionary of Occupational Titles (DOT) and/or its companion publication. She is limited to a work environment with no exposure to unprotected heights or dangerous machinery. She is limited to an occupation with a mathematical developmental rating of one and a language development

    rating of one as those developmental rating levels are defined in the DOT and/or its companion publication. She is limited to work that allows the individual to be off task 15% of the work day in addition to regularly scheduled breaks. Her work is limited to simple, routine, concrete, tangible, and repetitive tasks in a work environment free of fast-paced production requirements. She is limited to work that involves only simple, work-related decisions and to work that has few, if any, work place changes. She is limited to work with no interaction with the public and only occasional interaction with co-workers and supervisors and no tandem tasks with co-workers and supervisors. She is limited to work that allows, on average, one absence per month where "absence" is defined as failing to appear, tardy, or leaving early from a scheduled work shift. [Dkt. 8-2 at 33] (ALJ Whitaker, 2013)

- [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: She should work in an area with only occasional exposure to fumes, odors, dust, gases, and poor ventilation. She should work around a noise level of 3 (moderate) or less as defined in the chart in the Dictionary of Occupational Titles. She should not have exposure to bright, pulsating lights. She is limited to simple, unskilled work; she should not work with the general public; and she should have only occasional interaction with co-workers and supervisors. [Dkt. 8-9 at 76] (ALJ Pickett, 2016).

- [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is not capable of climbing ladders, ropes and scaffolds. The claimant's work cannot require driving to perform the functions of the job, exposure to hazardous moving machinery, unprotected heights, bright/pulsating lights, or interaction with the public. The work should not require complex written or verbal communications. The claimant is capable of occasional, superficial interaction with coworkers and supervisors. The claimant is capable of simple, routine, repetitive tasks that are concrete and tangible, with few, if any, workplace changes, with no fast-paced production requirements and no tandem tasks or teamwork. [Dkt. 8-8 at 21] (ALJ Whitfield, 2018).

The opinions of Dr. O'Brien and Dr. Grant were given "great weight" by ALJs Whitaker and Pickett for the period after June 1, 2010, [Dkt. 8-2 at 30, Dkt 8-9 at 76, 79], but given only "partial weight" by ALJ Whitfield. ALJ Whitaker rejected Dr. Grant's diagnosis of borderline intellectual functioning because, in ALJ Whitaker's opinion, Dr. Grant's testing was invalid because Claimant's scores were affected by her anxiety. ALJ Pickett found that Claimant did, in

13

fact, have borderline intellectual functioning, noting correctly that Dr. Grant—the actual expert—considered the results sufficiently reliable to reach the diagnosis. [Dkt. 8-9 at 71] (citing Dkt. 8-7 at 102). There are more examples, but it is unnecessary to belabor the point.

### V.  Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED and REMANDED for further proceedings consistent with this Order**.[9]  Specifically, on remand, if the Commissioner is unable to issue a fully favorable decision based on the current record, yet another hearing must be held, at which a psychological expert shall be called to address the issue of Claimant's psychological impairments and the effect of those symptoms on her ability to work during the relevant time period of January 27, 2007—the amended onset date—to March 31, 2009.  Anything less than fully favorable decision issued by the ALJ must do the following:

- Provide a clear explanation, with citation to relevant evidence of record, for what change occurred in Claimant's condition such that she was disabled as of June 1, 2010, and not disabled prior to March 31, 2009;

- Ensure that any discussion of Claimant's ability to babysit, go to Walmart, go to Applebee's, or engage in any other activity is considered within the context of how those activities were actually conducted;

---

[9] The Court recognizes that Claimant summarily requests a remand to award of benefits rather than remand for further proceedings.  *See* [Dkt. 12 at 34].  Claimant does not address the applicable law, however, which establishes a very high bar for doing so:  the record before the court "'can yield but one supportable conclusion.'"  *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020) (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).  While quite frankly the Court wishes it were otherwise, given the absurdly long time this case has already been pending, the Court cannot find that standard to be met in this case, largely due to the myriad deficiencies in the Commissioner's varying opinions.

- Provide a properly supported explanation for the weight given to each medical opinion of record and for the subjective symptoms evaluation; and

- Ensure that the determination with regard to Claimant's RFC for the relevant time period addresses **all** of Claimant's impairments and the symptoms therefrom, including the aggregate effects of those impairments and symptoms.

SO ORDERED.

Dated: 11 JUL 2024

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.